UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAMUEL LUIS LOPEZ

Defendant.

Case No. 1:26-cr-55

Hon. Hala Y. Jarbou

______________________________________/

# OPINION

Before the Court is Defendant Samuel Luis Lopez's motion to suppress evidence seized from a residence during the execution of a search warrant. (ECF No. 24.) In his motion, Lopez argues that the warrant was not supported by probable cause because the warrant affidavit failed to establish a sufficient nexus between the residence and criminal wrongdoing. He also contends that no officer could have reasonably relied upon the warrant in objective good faith. The Court will deny his motion to suppress for the following reasons.

## I. BACKGROUND

State and local law enforcement began investigating Lopez as part of a multijurisdictional effort to combat cocaine trafficking in western Michigan. Using a criminal informant, officers arranged three controlled purchases of cocaine from Lopez in July and August of 2025. (Warrant Aff. 3, ECF No. 24-1.)

In the first controlled buy, the informant arranged a drug deal with Lopez over the phone. (*Id.* at 4.) While under law enforcement surveillance and with prerecorded VICE funds in hand, the informant proceeded to the agreed-upon location; a roadway in Grand Rapids. (*Id.*) At the buy location, the informant entered a dark blue Jeep registered to Lopez and purchased cocaine

from a man he later identified as Lopez.[1] (*Id.* at 4–5.) After a brief exchange, the informant and Lopez parted ways. (*Id.* at 4.) Following the buy, detectives last observed Lopez's Jeep heading east on Cedar Street NE near Lafayette Avenue NE in Grand Rapids. (*Id.*)

The next controlled purchase followed a similar pattern. The informant set up a drug deal with Lopez by phone to occur at an intersection in Grand Rapids. (*Id.*) At the buy location, law enforcement observed the informant enter a dark blue Audi sedan registered to Lopez and purchase cocaine. (*Id.*) Lopez and the informant then left the area separately. (*Id.*) Immediately after the controlled buy, law enforcement observed the same Audi backing into the driveway at 324 Cedar Street NE. (*Id.*)

In the third and final controlled purchase, law enforcement surveilled Lopez's movements both before and after the transaction. A few minutes before the purchase occurred, an officer surveilling 324 Cedar Street NE saw Lopez exit the residence, enter the same dark blue Audi from the prior transaction, and drive away. (*Id.*) A few minutes later, another officer observed a male subject enter the same Audi in the driveway of a residence on 249 Trowbridge Street NE, which is Lopez's registered address. (*Id.*) A minute later, the Audi arrived at the buy location. (*Id.*) Three minutes after the controlled purchase, the Audi returned to 324 Cedar Street NE and an officer observed Lopez exit the vehicle and enter the residence. (*Id.*)

Within a week of the final controlled buy, detectives obtained a search warrant for the entire premises of 324 Cedar Street NE. (Search Warrant 1, ECF No. 24-1.) The warrant authorized the search and seizure of, among other items, cocaine, cash linked to the sale of cocaine, and any firearms used for the protection of cocaine. (*Id.*) Officers executed the search warrant,

---

[1] Defendant does not challenge the reliability of the informant. Law enforcement searched the informant's car and person before and after each controlled buy to confirm the absence of other controlled substances besides the narcotics purchased from Lopez. (Warrant Aff. 4–5.) After each controlled buy, law enforcement field tested the purchased substances; all tested positive for cocaine. (*Id.*)

arresting Lopez at the scene as he exited his Audi sedan, which was sitting in the driveway. (Pl.'s Resp. 2, ECF No. 29.) Officers recovered cocaine, marijuana, drug paraphernalia, approximately $20,000 in cash, and seven firearms from the house and its premises. (*Id.*) Lopez seeks to suppress this evidence.

## II. LEGAL STANDARD

The Fourth Amendment to the U.S. Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is met when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A warrant affidavit meets that standard by establishing a sufficient "nexus between the place to be searched and the evidence sought." *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011). The probable cause inquiry is not reducible to a "neat set of legal rules," *Gates*, 462 U.S. at 232. Rather, it is a fact-intensive inquiry that "depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

The probable cause determination occurs at the issuance of the warrant by a neutral magistrate. When that magistrate's determination is challenged via a suppression motion, the reviewing court "must employ 'great deference'" to "the issuing magistrate's probable cause determination." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quoting *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (en banc)). Under this deferential standard, the Court's inquiry is appropriately limited to determining "whether the issuing judge had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Id.* (quoting *Gates*, 462 U.S. at 236). In its review, the Court can only consider the evidence presented

to the magistrate; here, that means the Court looks only within the "four corners" of the warrant affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).

## III. ANALYSIS

### A. Merits

Lopez argues the warrant affidavit fails to establish a sufficient nexus between Lopez's drug dealing activities and 324 Cedar Street NE. "Evidence that one leaves a 'residence, engages in a drug transaction, and then returns into the residence' 'plainly demonstrates a sufficient nexus' with the location." *Sanders*, 105 F.4th at 463 (cleaned up). Even a "single controlled buy" matching this pattern would "end the matter" in the Government's favor. *United States v. Florence*, 150 F.4th 773, 777 n.1 (6th Cir. 2025). Consequently, if officers had observed Lopez leave 324 Cedar Street NE, get in the Audi, sell cocaine to the informant, and then return to 324 Cedar Street NE, his suppression motion would be meritless. Here, however, there is a wrinkle. In the final controlled buy—the only transaction where officers observed Lopez both leave 324 Cedar Street NE and return after the deal—Lopez's Audi made a brief intervening stop at 249 Trowbridge Street NE before proceeding to the buy location. (Warrant Aff. 4). Lopez argues that this stop "weakens" the nexus between the third controlled buy and 324 Cedar Street NE. (Def.'s Br. 6, ECF No. 24.)

To the extent that Lopez is arguing *Sanders* does not completely dictate the outcome of this case, he has a point. The logic of the leave-buy-return fact pattern present in *Sanders* and *Florence* is that the chain of events directly and exclusively links the drugs sold to the residence. *See Sanders*, 105 F.4th at 463; *see also United States v. White*, 990 F.3d 488, 490 (6th Cir. 2021). Applying that framework here means that the cocaine Lopez sold in the third controlled buy could have come from one of two locations: 324 Cedar Street NE *or* 249 Trowbridge Street NE. But even if this complication means that *Sanders* is no longer on all fours in this case, this Court's

inquiry is not at an end. *Sanders* merely establishes what series of acts are sufficient to establish a nexus between a residence and criminal wrongdoing; nothing in *Sanders*, or prior precedent, indicates that pattern is necessary for probable cause to be found. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, at *1 (6th Cir. Jan. 4, 2023) (observing SUV leaving from, but not immediately returning to, residence before a controlled buy sufficient for probable cause); *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019) (observing defendant drive directly from his condo to the site of the most recent buy sufficient for probable cause). Accordingly, this Court must evaluate "whether the issuing judge had a 'substantial basis for concluding that a search'" of 324 Cedar Street NE would uncover evidence of cocaine trafficking. *Sanders*, 106 F.4th at 461 (quoting *Gates*, 462 U.S. at 236).

Probable cause, by its very nature, is not a requirement of certainty. "[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008). The affidavit need not state that drugs have been purchased at the house for reliable evidence to exist. *United States v. Jenkins*, 743 F. App'x 636, 644 (6th Cir. 2018). Here, reliable evidence connects Lopez's drug dealing to 324 Cedar Street NE. Officers observed the informant enter Lopez's Audi on two occasions to purchase cocaine, so there was a "near certainty drug trafficking evidence existed" in the vehicle. *Sanders*, 106 F.4th at 466. Following those controlled buys, officers observed the Audi return to 324 Cedar Street NE. (Warrant Aff. 4.) Officers also observed the Audi parked in the driveway at 324 Cedar Street NE on "multiple occasions" in the weeks leading up to the issuance of the warrant. (*Id.* at 5.) The repeated observations of the Audi either parked outside 324 Cedar Street NE or arriving at the residence shortly after a controlled buy significantly strengthens the inference that drugs or drug

paraphernalia were stored in the home. *See Jenkins*, 743 F. App'x at 643 (tracking a "phone consistently used to arrange drug sales" to the residence searched). And while Lopez's registered address at 249 Trowbridge Street NE may perhaps be "an equally likely repository of evidence," that fact does not diminish the considerable evidence on the face of the warrant that drugs and drug paraphernalia would be found at 324 Cedar Street NE. *United States v. Stearn*, 597 F.3d 540, 560 (3d Cir. 2010); *accord Sanders*, 106 F.4th at 466–67.

In addition to the cocaine itself, the search warrant also authorized the search and seizure of any cash proceeds from the sale of cocaine. (*See* Search Warrant 1.) Officers twice observed Lopez return from a controlled buy to 324 Cedar Street NE. (Warrant Aff. 4.) These observations established a fair probability that the proceeds of cocaine trafficking would be found inside the home. *See Sanders*, 106 F.4th at 463 (noting the conclusion that Sanders would have left drug proceeds in a vehicle parked outside "unlikely"). While Lopez concedes that officers at one point had probable cause to believe the prerecorded VICE funds were inside 324 Cedar Street NE, he argues that the seven-day delay between the last controlled buy and the warrant rendered the information stale. (*See* Def.'s Br. 11–12). Lopez cites no authority stating a seven-day delay in this context is too long, and Sixth Circuit precedent in drug and drug proceeds cases run squarely against him. *See United States v. Simmons*, 129 F.4th 382, 384 (6th Cir. 2025) (seven days not too stale); *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021) (twelve days); *Sanders*, 106 F.4th 455 (seven days).

Lopez also argues that the warrant affidavit is defective because it rests on a generalized suspicion that he, as a known drug dealer, would store evidence at 324 Cedar Street NE. (*See* Def.'s Br. 4–7.) This argument misinterprets the Sixth Circuit's "known drug dealer" caselaw. "Customarily, known drug dealer cases involve a search warrant affidavit indicating that a drug

dealer lives at a certain location." *Sanders*, 106 F.4th at 465 (citing *United States v. Reed*, 993 F.3d 441, 444 (6th Cir. 2021)). And "in the case of drug dealers, evidence is likely to be found where the dealers live." *Id.* (quoting *United States v. Davidson*, 36 F.2d 856, 860 (6th Cir. 1991)). But as Lopez points out, nothing in the affidavit suggests he lived at 324 Cedar Street NE. And no inferences in the warrant rest on the conclusion that Lopez resides at that address. Rather, the warrant affidavit relies upon a nexus between 324 Cedar Street NE and drug trafficking through two controlled buys with direct connections to the residence. (Warrant Aff. 4.) "Probable cause based on controlled buys . . . does not depend on the 'known drug dealer' inference." *Florence*, 150 F.4th at 779. Therefore, Lopez's contention that this case falls within the known drug dealer line of cases is off base.

The remainder of Lopez's objections are equally unpersuasive. Lopez contends that the warrant should have established that 324 Cedar Street NE was where Lopez "stored, packaged, sold, purchased, or protected" cocaine. He also faults the investigators for failing to do a trash pull and for lacking "substantive" observations of Lopez coming to and from the residence. (*See* Def.'s Br. 7.) An "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). The particularity that Lopez seeks is not required by the Fourth Amendment where the affidavit otherwise establishes a sufficient nexus. *See Ellison*, 632 F.3d at 349. Nor does the absence of a trash pull invalidate the warrant where there are "other time-honored" markers present, including "controlled buys," "police surveillance," and "averments about an officer's training and experience." *Sanders*, 106 F.4th 455. As to Lopez's observed connection to the residence, officers twice observed an Audi driven by Lopez go to 324 Cedar Street NE immediately following two controlled buys and once observed him leave the residence before proceeding to a

controlled buy. (Warrant Aff. 4.) Consequently, the Court finds the reviewing magistrate had a substantial basis for concluding that the search of 324 Cedar Street NE would uncover evidence of wrongdoing.

**B. Good Faith Exception**

The Government argues that even if the magistrate lacked a substantial basis to issue the warrant, the exclusionary rule should not apply because investigators relied on the search warrant in good faith. When evidence is seized pursuant to an illegal search or seizure, that evidence may be excluded from a criminal proceeding. *Utah v. Strieff*, 579 U.S. 232, 237 (2016). The purpose of the exclusionary rule is to deter police misconduct. *Davis v. United States*, 564 U.S. 229, 236–38 (2011). Suppression is thus merited when an officer obtains evidence through "deliberate, reckless, or grossly negligent conduct." *Herring v. United States*, 555 U.S. 135, 144 (2009). But it is not merited "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 920 (1984).

*Leon* itself contains several exceptions, one of which Lopez invokes here. An officer does not rely on a warrant affidavit in good faith when it is "so lacking in indicia of probable cause so as to render official belief in its existence entirely unreasonable." *Id.* at 923. Such an affidavit merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Christian*, 925 F.3d at 312 (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). Officers cannot in good faith rely upon these "bare bones" affidavits because they "nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied." *Sanders*, 106 F.4th at 455 (citing *United States v. Baker*, 976 F.3d 636, 647 (6th Cir. 2020)).

The good faith inquiry is more deferential than the "substantial basis" standard used in the probable cause analysis. *See United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017). A warrant that falls short of establishing probable cause may be validly relied upon if it establishes "a minimally sufficient nexus between the illegal cavity and the place to be searched." *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004) (en banc). If this Court can identify "'some modicum of evidence, however, slight—between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *White*, 874 F.3d at 497 (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

This standard is readily met by the affidavit here. To distill, there are several events that connect Lopez's known drug dealing to 324 Cedar Street NE. After the first controlled buy, officers observed Lopez's dark blue Jeep driving east on Cedar Street NE near Lafayette Avenue NE, heading towards 324 Cedar Street NE. Immediately following the second controlled buy, officers observed Lopez's Audi backing into the driveway of the residence. In the final controlled buy, officers observed Lopez exiting 324 Cedar Street NE prior to the transaction and immediately returning afterwords. And in the weeks leading up to the issuance of the search warrant, officers several times observed Lopez's Audi parked outside the home. Taken together, these events establish a "minimally sufficient nexus" between Lopez's drug dealing and 324 Cedar Street NE.

The case only becomes clearer in comparison to warrant affidavits that have failed to create a minimally sufficient nexus. Consider the affidavits in *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) and *United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006). In *Brown*, the affidavit contained no facts connecting the residence searched to the alleged drug dealing activity beyond a "passing reference" to the suspect's car registration. 828 F.3d at 385. There were no indications that law enforcement even surveilled the targeted residence to establish links to the alleged drug

conspiracy. *Id.* Here, in contrast, law enforcement surveilled Lopez coming from and going to 324 Cedar Street NE and on multiple occasions saw his Audi parked there. In *McPhearson*, the only connection between the residence and drug trafficking was the fact that police arrested the defendant at his residence and found crack cocaine in his pocket. 469 F.3d at 526. The affidavit contained no allegations of drug dealing, or averments by an officer that the amount of crack found on McPhearson's person indicated a quantity for sale. *Id.* at 527. Unlike in *McPhearson*, the warrant affidavit here does not rely on a one-off circumstantial connection between the home and wrongdoing. Therefore, the defective warrants in *McPhearson* and *Brown* are not analogous to this case. As described above, the affidavit here goes "beyond bare conclusions and suppositions" to establish a nexus between 324 Cedar Street NE and Lopez's drug dealing activities. *Id.* Consequently, law enforcement's reliance on that warrant affidavit was in good faith.

## IV. CONCLUSION

In summary, the reviewing magistrate had a substantial basis for concluding that the search of 324 Cedar Street NE would uncover evidence of wrongdoing because the warrant affidavit established a sufficient nexus between Lopez's drug dealing activities and the residence. Therefore, the search was supported by adequate probable cause and the evidence seized pursuant to the search warrant is admissible. Alternatively, suppression is not merited because law enforcement relied upon the warrant affidavit in objective good faith.

An order consistent with this Opinion shall issue.

Dated: November 12, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE